UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WESLEY SEAL,

                Plaintiff,                             Case No. 03-10122-BC
                                                    Honorable David M.  Lawson

v.

JOHN ALDEN LIFE INSURANCE COMPANY,

                Defendant.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY FEES

       The question presented by the plaintiff's motion for attorney fees in this action for benefits brought under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001, *et seq.* (ERISA), is whether the Court may and ought to award a claimant attorney fees incurred during proceedings held at the ERISA plan administrator level conducted during a post-suit, court-ordered remand for the purpose of considering additional information theretofore not presented to the plan administrator.  Although the Sixth Circuit has held that attorney fees may not be awarded for pre-suit administrative proceedings under the pertinent ERISA provision, the court of appeals has not addressed the precise issue presented in this case, and other circuits are divided on the question.  This Court holds that the district court has discretion to award attorney fees under 29 U.S.C. § 1132(g)(1) for proceedings conducted by a plan administrator pursuant to an order of remand to consider information after suit has been filed.  After considering the relevant factors, the Court also concludes that discretion favors an award of attorney fees to the plaintiff in this case. Because of this determination, the Court need not decide whether a lien in favor of the plaintiff's attorney arose by operation of law.

I.

The underlying facts are not in dispute. The plaintiff, Wesley Seal, worked for Phillip Agnew Builders, Inc. (the employer). As part of his employment, the plaintiff participated in his employer's medical insurance plan, which is an employee welfare plan within the meaning of 29 U.S.C. § 1002(1). Prior to June 30, 2001, benefits were administered by Blue Cross/Blue Shield of Michigan. In April of 2001, the employer switched coverage to the defendant, John Alden Life Insurance Company. According to the defendant's records, the plaintiff's coverage began on June 1, 2001. Shortly after the policy change, the plaintiff was diagnosed with cancer. He was unable to continue working and received his last paycheck on July 4, 2001. Under his employer's plan, his medical coverage continued. However, the defendant discontinued coverage under the circumstances outlined below, and the plaintiff was exposed to substantial medical expenses, which now have been resolved by reinstatement of the coverage wrongfully terminated. Reinstatement did not occur until the plaintiff filed suit in this Court.

On November 9, 2001, the plaintiff underwent a bone marrow transplant at the Karmonos Cancer Institute, which the defendant previously had approved. The plaintiff paid his portion of the procedure; the defendant paid its share. Between July 17, 2001 and July 30, 2001, the plaintiff was admitted to and stayed at a facility operated by Covenant Healthcare as a result of general malaise and persistent cough. There, the plaintiff was diagnosed with leukemia and underwent chemotherapy. Doctors ordered intensive medical treatment, and such treatment was provided between July 2001 and January of 2003.

In May of 2002, the plaintiff remained off work and applied for benefits from the federal government, including Social Security disability benefits and Medicaid. The health care insurance

policy administered by the defendant, the plaintiff asserts, required an insured employee to seek benefits from the federal government to offset medical expenses incurred. On May 16, 2002, the plaintiff told his employer that he was entitled to Social Security and Medicaid benefits and that those benefits would be retroactively provided to August 1, 2001. No confirmatory documentation was provided, however. Nonetheless, Phillip Agnew Builders contacted the defendant to cancel coverage. The employer put its request in a letter dated May 21, 2002, which explained:

> We would like to file an appeal for the premiums we paid for an employee that has been off work since July of 2001.
>
> We kept paying his premium so that he had medical coverage.
>
> He had indicated to us that he had trouble getting Social Security to kick in with benefits. He notified us today that Social Security indeed was in effect for him. That he would receive monthly payments dating back to August 2001 and that he was eligible for Medicaid effective August 2001 and they would pay any extra bills he had dating back to August of 2001.
>
> Social security just notified him . . . 5/16/02 and he in turn notified us. So we did call and cancel his coverage as of May 1st, 2002. He was off with an extended illness of leukemia and has no way of knowing for sure if he will be able to return to work. For that reason we terminated his coverage as soon as we knew he would be covered under Medicaid.
>
> Please let us know if there is help for us with these back premiums.

Pl.'s Mot. Atty Fees Ex. Q. Attachment 5, Letter (May 21, 2002).

The plaintiff now acknowledges that he mistakenly told his employer that he would be provided with federal benefits on a retroactive basis. In fact, coverage under Medicaid was not effective until May 2, 2002. However, after the employer contacted the defendant, the defendant backdated the termination of coverage to July 1, 2001. The defendant then demanded repayment of monies paid on the plaintiff's behalf to the various healthcare providers the plaintiff had visited since that time. None of this action was reported to the plaintiff, who was the plan beneficiary.

-3-

Meanwhile, when the employer told the defendant that the plaintiff had obtained other healthcare benefits, the defendant, at the employer's request, refunded to the employer the premiums it had paid for the plaintiff's health care coverage.  For its part, John Alden Life Insurance first notified the plaintiff of coverage cancellation in a letter dated July 31, 2002.

By August 8, 2002, the employer had learned that the plaintiff's information was inaccurate, and the employer wrote to the defendant "to appeal the previous letter."  The employer once again explained:

> This letter is in regard to our request to cancel insurance for our past employee, Wesley Seal.
>
> Wesley Seal informed us on 5-16-02 that Social Security was in effect for him. That he would in effect be eligible for Medicaid effective August 2001 and that they would pay extra bills back to this date.
>
> So we called John Alden, talking to Erica, explaining the whole situation.  She stated that she could cancel his insurance coverage back to 5-1-02 and if we would like to appeal to Premium Services to reclaim past premiums, to fax a letter explaining the case. This is what we then did. Copy of the letter enclosed.
>
> As it turns out, Wesley Seal was not correct in his information to us. Medicaid did go into effect . . . but only [became] effective 5-1-02.  He has no coverage before this date. Enclosed copy of verification from Saginaw County Family Independence Agency.
>
> We would like to appeal the previous letter since the information was incorrect.  He needs the coverage John Alden already provided.
>
> Please reinstate the coverage he had with you until 5-1-02.

Pl.'s Mot. Atty Fees Ex. Q Attachment 9, Letter (Aug. 8, 2002).

The defendant responded and denied the employer's request on August 13, 2002. The defendant stated:

> This letter is in response to your letter dated August 08, 2002 regarding Wesley Seal.

-4-

Our records show that we received a request in May, 2002 to back-date Mr. Seal's coverage to August 01, 2001. After reviewing the information we received we made an exception to back-date Mr. Seal's termination to August 01, 2001.

We are sorry, but we cannot comply with your request to change Mr. Seal's cancellation date to May 01, 2002.

Pl.'s Mot. Atty Fees Ex. Q Attachment 10, Letter (Aug. 13, 2002)

On August 14, 2002, the plaintiff, through attorney Donald Popielarz, sent the defendant a

letter seeking reinstatement of benefits back to the original date. He wrote:

I am in receipt of your letter dated July 31, 2002, addressed to Wesley E. Seal. Please be advised that the John Alden Life Insurance Company has illegally and improperly terminated the medical benefits for Wesley E. Seal.

The John Alden Life Insurance Company is of the mistaken belief that Mr. Seal had Medicaid benefits in effect as of August 1, 2001. Again, that date is incorrect.

The John Alden Life Insurance Company and Phillip Agnew Builders have been advised both by Mr. Seal and by the hospitals here in Michigan that Mr. Seal's Medicaid went into effect on May 1, 2002. I am enclosing a printout from the Saginaw County Agency . . . verifying that coverage date.

Based upon information and belief, we believe that John Alden Life Insurance Company has irresponsibly returned premiums to the Phillip Agnew Builders in an effort not to pay the claims of Mr. Seal[]. This is improper.

We are advising both John Alden and Phillip Agnew Builders by copy of this letter to correct their records to show that Mr. Seal's Medicaid did not go into effect until May 1, 2002.

Please cease correspondence with Mr. Seal. Direct all future correspondence to my attention as his attorney.

Pl's Mot. Atty Fees, Ex. Q Attachment 11, Letter (Aug. 14, 2002). On September 30, 2002, the

defendant responded:

The following information is being provided in response to your inquiry, dated August 14, 2002[.]
. . .

On May 16, 2002, our Customer Service Department received a phone call from Mr. Phillip Agnew of Phillip Agnew Builders. Mr. Agnew requested to terminate Mr. Seal['s coverage]. Mr. Agnew was advised Mr. Seal would be terminated effective May 1, 2002. He was also advised to send a written appeal if they would like to request an earlier termination date for Mr. Seal.

. . .

On May 21, 2002, . . . Phillip Agnew . . . request[ed] Mr. Seal be terminated as of an earlier date. After a review of the records, an exception was made to terminate Mr. Seal's coverage effective August 1, 2001. . . . On June 12, 2002 a letter (a copy of which is enclosed) was sent [to] Phillip Agnew Builders, advising of exception.

. . .

Upon receipt of your inquiry we have once again reviewed this matter. . . . Since the refund . . . has been issued . . ., we cannot honor [the employer's] request to change Mr. Seal's termination date to May 1, 2002.

This appeal has been reviewed according to Fortis Health appeal procedures. Phillip Agnew Builders has the right to file a first level grievance regarding this determination. Please note, the second level grievance is the final step in the grievance appeal process. They have 60 days from the date of this letter to submit a written grievance for review. They should submit with their grievance any additional information that they would like to have reviewed. All pertinent information will be considered and reviewed.

Pl.'s Mot. Atty Fees, Ex. Q Attachment 12, Letter (Sept. 30, 2002).

On October 29, 2002, the employer sent the defendant another letter. The employer wrote:

Our first letter to you dated May 21, 2002 . . . was strictly a letter requesting help with premiums if unnecessary premiums were made.

The letter clearly states that Wesley was <u>eligible</u> for Medicaid for payments of <u>extra</u> bills. The letter contained <u>no</u> written documentation of coverage and we clearly stated that this was verbal information.

For you to refund premiums and terminate coverage without even contacting us or the insured is completely unacceptable.

To use the refund as an excuse for this unacceptable procedure is ridiculous . . . . Because whenever additional premiums are due for whatever reason, they are simply billed to us and immediate payment is expected. Which I may add that our premiums have always been paid on time.

This action by your company has caused our employee Mr. Wesley Seal much undue stress and costs which are hardly something one needs when fighting a disease such as leukemia or any disease for that matter.

As far as our company is concerned, we should not even be in an appeal procedure since we were never contacted about coverage termination nor were you ever supplied with documentation that the insured had other coverage . . . .

It is clear that the insured had no other coverage as stated in our letter to you . . . .

Therefore, Mr. Seal's coverage is to remain in effect until May 1, 2002 and the refunded premiums are to be added to our monthly premium for immediate repayment.

Pl.'s Mot. Atty Fees Ex. Q Attachment 13, Letter (Oct. 29, 2002).

The defendant responded to this letter on November 16, 2002. The defendant wrote:

The following information is being provided in response to your 1st level grievance inquiry dated October 29, 2002 . . . .

On May 16, our Customer Service Department received a phone call from Mr. Phillip Agnew . . . . Mr. Agnew requested to terminate Mr. Seal['s insurance overage]. Mr. Agnew was advised Mr. Seal would be terminated effective May 1, 2002. He was also advised to send a written appeal if they would like to request an earlier termination date for Mr. Seal.

On May 21, 2002, our Premium Services Department received the written appeal (a copy of which is enclosed), dated May 1, 2002. . . . The appeal repeatedly asked for an earlier termination date for Mr. Seal. . . .

After a review of our records, an exception was made to terminate Mr. Seal's coverage effective August 1, 2001 as requested by Mr. Agnew in his appeal. On June 12, 2002, . . . a letter was sent [to] Phillip Agnew Builders advising of the exception.

On June 14, 2002, a refund . . . was sent [t]o Phillip Agnew Builders for the premium credits resulting from Mr. Seal's retroactive termination.

On August 8, 2002, our Premium Services Department received a telefax . . . dated August 8, 2002, concerning the termination date of Mr. Seal. Since an exception had been made to honor the request for a retroactive termination of Mr. Seal's coverage back to August 1, 2001, we were unable to comply. . . .

On August 19, 2002, our Premium Services Department received a written complaint . . . from Mr. Donald Popielarz . . . to change Mr. Seal's termination date . . . . Since the termination date of August 1, 2001 was requested by appeal and approved Mr. Seal's coverage remains terminated effective August 1, 2001.  On September 30, 2002, a letter was sent to Mr. Donald Popielarz . . . advising this.

We have once again reviewed our documentation and your appeal.  Our decision remains unchanged.

Your appeal has been reviewed according to Fortis Health grievance procedures. Phil Agnew Builders have the right to file a second level grievance regarding this determination . . . . You have 60 days from the date of this letter to submit a written grievance for review.  Please submit with your grievance any additional written documentation you have not previously submitted which you would like to have reviewed.  All pertinent information will be considered and reviewed.

Pl.'s Mot. Atty Fees Ex. Q Attachment 14, Letter (Nov. 16, 2002).  Some five months later, the plaintiff's attorney asked for the plaintiff's file from the defendant. The defendant states that it provided the file.

On April 7, 2003, the plaintiff filed suit in state court to recover benefits allegedly owed him by the defendant under an ERISA-regulated benefits plan.  On May 16, 2003, the defendant removed the action to federal court.  Despite the exchange of letters protesting the termination of coverage described above, the defendant took the position that the plaintiff failed to exhaust his remedies with the plan administrator, based on a plan provision that states: "Within 60 days of receiving a claim denial, a certified letter must be sent to us stating the reasons for appeal and any additional information to support the claim."  AR at 52.  The Court held a scheduling conference in August 2003, and to address the defendant's claim and the plaintiff's response, the scheduling order included a provision that "[n]othing in this Order shall be construed to prohibit the plaintiff from pursuing his right to a Second Level Grievance with the defendant, to be concluded prior to **January 2, 2004.**"  Scheduling Order at 3 (Aug. 8, 2003).

-8-

On October 6, 2003, while the lawsuit was pending in this Court, the plaintiff submitted the

following request to the defendant:

> On behalf of Wesley Seal, I am requesting reconsideration and appeal of John Alden
> Life Insurance Company's cancellation of Mr. Seal's health insurance coverage.
> . . .
> Both Wesley Seal and his healthcare providers relied on [the defendant's approval
> of medical treatment from August 2001 until May 2002 for the plaintiff].
> . . .
> The procedure used when John Alden cancelled Mr. Seal's coverage is not provided
> in the policy.  The Administrative Record does not contain any documentation
> creating the authority exercised by the company.  Mr. Seal was never given notice
> of the procedures followed, nor was he ever provided any documentation to establish
> the terms of the applicable procedures.  Further, the employer's initial request sought
> backdated cancellation of incurred insurance benefits.  This procedure is not
> provided  in the John Alden policy.  Mr. Seal was not notified of the employer's
> appeal in May of 2002 [that] resulted in the backdating coverage and cancellation of
> benefits incurred in August of 2001.  He was not provided instructions for appeal or
> the procedure followed canceling his coverage.  At no point during the cancellation
> of Mr. Seal's coverage was he provided a full or fair opportunity to object to the
> cancellation.
> . . .
> For the reasons noted above, Mr. Seal requests reconsideration and appeal of John
> Alden's backdated cancellation of insurance coverage at issue and requests
> reinstatement of insurance coverage for the period of August 1, 2001 through May
> of 2002.  To the extent premiums were returned for the coverage requested, Mr. Seal
> stands ready to pay any premium required.

Pl.'s Mot. Atty Fees Ex. Q Attachment 14, Letter (Oct. 6, 2003).  On October 22, 2003, the

defendant responded requesting information to address eligibility including the plaintiff's last date

of employment, payroll records, employer tax records, and documentation of approved leaves of

absence.

The defendant sought a response by November 14, 2003.  When it did not receive one, it

followed up on November 21, 2003 requesting the same information.  On December 9, 2003, the

plaintiff responded by forwarding tax information from the employer.  The defendant deemed this

information insufficient and again asked for the same information on December 15, 2003.

-9-

Thereafter, the defendant informed the plaintiff that it would schedule a hearing with its ERISA claim appeal panel and the plaintiff could submit any additional material for consideration.

The parties engaged in settlement discussions, and on March 11, 2004 a settlement conference was held. A representative of the employer, however, did not attend. The parties nonetheless discussed settlement and documents were exchanged. However, on May 7, 2004 the plaintiff indicated that the matter could not be settled, and approximately three weeks later the defendant again requested information to complete its review of the plaintiff's reconsideration request. On November 12, 2004, an administrative hearing was held. The panel concluded that it needed the information requested from the plaintiff on several occasions to complete its review.

On January 13, 2005, this Court held another scheduling conference, after which it issued an order that "[d]iscovery shall be completed on or before February 14, 2005" so that the parties could obtain needed information from the employer, who was not a party to the lawsuit. The Court also directed the parties to notify the Court if they wished to seek additional administrative review in light of discovery. Then on March 2, 2005, the Court remanded this matter to the plan administrator at the request of the parties. The Court's order stated:

> The parties have notified the Court that they wish to return to the plan administrator to all[ow] it to consider further its decision on the plaintiff's benefits application in light of other information to be submitted by the plaintiff that may not be part of the administrative record. The Court believes that the plan administrator should have the first opportunity to defend the integrity of the Plan and the company by considering all relevant evidence that relates to the plaintiff's claim for benefits. Thus, the matter should be remanded to the plan administrator for further findings of fact.

Order of Remand (Mar. 2, 2005). On May 20, 2005, the grievance panel – the body that reviews determinations of the plan administrator – reinstated the plaintiff's benefits based on the

-10-

supplemental information provided by the plaintiff.  In a letter dated May 20, 2005, the defendant

stated, in relevant part:

> The . . . Panel has reviewed your correspondence and the supplemental materials
> pertaining to the request to reinstate the coverage of Mr. Wesley Seal.
>
> Based on this documentation, the Panel reversed our original determinatio[n] and
> will provide an option to reinstate coverage for Mr. Seal under the group's health
> insurance plan from July 1, 2001 through July 1, 2002 and possibly thereafter.  The
> terms of the reinstatement as well as the continuation coverage and the premium
> required are set forth below.
> . . .
> In order to reinstate coverage pursuant to the Exception to Termination provision
> listed above, premium in the amount of $4,313.29 must be paid.  If Mr. Seal further
> elects the Continuation provision, the premium needed to reinstate him . . . is an
> additional $1,713.27.

Pl.'s Mot. Atty Fees Ex. J., Letter (May 20, 2005).

Thereafter, the plaintiff sent the defendant a check for $4,313.29 to reinstate coverage.  The

defendant confirmed that it had received the check and that coverage had been reinstated.

The plaintiff claims that his attorney sent several letters and spoke via telephone with the

defendant requesting that the defendant make payments through the plaintiff's counsel, and not

directly to healthcare providers.  In the letters, the plaintiff's attorney claimed a lien on the payments

as proceeds of the claim settlement against which he intended to collect his fee.  However, the

defendant sent payments directly to heath care providers, despite repeated correspondence by the

plaintiff's attorney reminding the defendant of his lien.  In at least one instance, one of the health

care providers had initiated collection litigation against Mr. Seal.  The plaintiff's attorney protested

the direct payment to that medical creditor, explaining:

> This correspondence will confirm our recent telephone conversation. The premium
> has been paid to John Alden Life Insurance Co. on behalf of Mr. Seal.  As we
> discussed, Mr. Seal will provide a release and indemnification to John Alden with

regard to his medical benefit claim, if the funds for the claim are forwarded to my office made payable to Mr. Seal and myself.

As you know, I have had extensive negotiations with Mr. Seal's various healthcare providers and expect that Mr. Seal's medical debts will be extinguished when I make payments to them.

In fact, one of the medical providers has initiated litigation against Mr. Seal, which will have to be litigated if I cannot negotiate payment.  As for your concern that a healthcare provider makes a claim against John Alden, upon settlement, releases could be obtained from the healthcare providers through the date of coverage.

Again, I remind you that I have asserted a lien for my attorney fees against the insurance benefits at issue.

Pl.'s Mot Atty Fees Ex. M, Letter (June 22, 2005).

The plaintiff claims that the defendant ignored these requests for payment of the benefits directly to his attorney's office instead of the healthcare providers. The plaintiff contends that the defendant has now paid over $300,000 to health care providers since this litigation began and alleges that the attorney is entitled to a percentage of those payments.

On October 5, 2005, the plaintiff filed a motion to enforce the attorney lien and for attorneys fees pursuant to 29 U.S.C. 1132(g)(1). The defendant has filed a response in opposition, and the Court held a hearing on November 22, 2005.  The matter is now ready for decision.

## II.

### A.

Title 29, section 1132(g)(1) of the United States Code provides:

(g) Attorney's fees and costs; awards in actions involving delinquent contributions

-12-

(1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

The plaintiff argues that this statue permits a district court, in its discretion, to award reasonable attorney fees to either party in an ERISA action. The defendant insists, however, that attorney fees may not be awarded for work performed at the pre-litigation, administrative portions of a benefits determination, citing *Anderson v. Proctor & Gamble*, 220 F.3d 449 (6th Cir. 2000).

In *Anderson*, the plaintiff developed multiple sclerosis during her employment and applied for disability benefits under her employer's welfare plan. The benefit review board denied the claim but did not notify the plaintiff in writing and did not inform her adequately of appellate remedies. After learning of the board's oral denial, the plaintiff hired an attorney. The attorney was successful in obtaining the board's denial in writing. He wrote a letter appealing the decision, which initially was unsuccessful, but ultimately that decision was reversed and benefits were reinstated. The plaintiff never filed suit against the plan administrator on the merits of the denial; she only filed suit thereafter to recover attorney fees. The court of appeals affirmed the denial of attorney fees under those circumstances. The court first examined the statutory language and concluded that nothing in the text precluded awarding attorney fees for proceedings at the administrative level. *Id.* at 453 (stating that "in interpreting a statutory provision authorizing attorneys' fees [in the Clean Air Act], reference to an 'action,' rather than an 'action or proceeding,' is 'not a sufficient indication that Congress intended the fee-shifting provision to apply only to judicial, and not administrative, proceedings'") (quoting *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 559 (1986)) (internal quotes, citations and alterations omitted). The court then referred to *Sullivan v. Hudson*, 490 U.S. 877 (1989), in which the Supreme Court held that under the Equal Access to

-13-

Justice Act attorney fees could be awarded for administrative proceedings under the Social Security Act, particularly where the "administrative proceedings may be so intimately connected with judicial proceedings as to be considered part of [a] 'civil action' for purposes of a fee award." *Id.* at 892. The court distinguished *Sullivan* as follows:

> In *Sullivan*, the Supreme Court allowed the prevailing party to recover attorneys' fees for legal work done in an administrative proceeding held pursuant to a district court order remanding the plaintiff's social security claims to the Secretary of Health and Human Services. *See Sullivan*, 490 U.S. at 892. Unlike Anderson, the plaintiff in *Sullivan* had already filed suit against the Secretary, after his claim for social security benefits had been denied.

*Anderson*, 220 F.3d at 453.  The court then distinguished *Delaware Valley* using the same rationale:

> However, unlike Anderson (but like the claimant in *Sullivan*), the plaintiffs in *Delaware Valley* challenged the merits of the administrative proceeding in court, and only recovered fees incurred during administrative appeals that took place after they filed suit to enforce a court-approved consent decree.

*Ibid.*  The court concluded that pre-suit "exhaustion proceedings are not 'intimately connected' with judicial proceedings in the manner described by the Supreme Court in its decisions awarding costs to parties who prevailed in litigation  related to the administrative proceedings for which they were awarded fees." *Id.* at 454.

Although *Anderson* stands for the proposition that pre-suit attorney fees may not be awarded for ERISA exhaustion efforts, the Sixth Circuit has not decided a case in which attorney fees were incurred as a result of a court-ordered remand, as here.  However, given the *Anderson* court's heavy reliance on the fact that no litigation had been commenced when the attorney fees were incurred in that case, the Court believes that commencement of an action in court is an important distinguishing fact that triggers the application of 29 U.S.C. § 1132(g)(1).  *See id.* at 452 (holding that "[b]ecause Anderson did not file a civil action for any of the reasons set forth in § 1132(a), but filed suit only

-14-

to recover attorneys' fees for legal work performed during her administrative claims proceeding, we find that § 1132(g) does not permit her to recover her costs"); and *ibid.* (citing *Cann v. Carpenters' Pension Trust Fund for Northern California*, 989 F.2d 313 (9th Cir.1993), and observing that "the Ninth Circuit held that § 1132(g) does not permit parties to recover attorneys' fees for the administrative phase of an ERISA proceeding, but limits awards to expenses incurred after one of the parties has filed a complaint in court").   The Sixth Circuit recently echoed this view in a Social Security fee case when, quoting *Sullivan*, 490 U.S. at 892, the court stated: "[W]here a court orders a remand to the Secretary in a benefits litigation and retains continuing jurisdiction over the case pending a decision from the Secretary which will determine the claimant's entitlement to benefits, the proceedings on remand are an integral part of the 'civil action' for judicial review, and thus attorney's fees for representation on remand are available." *Marshall v. Comm'r of Soc. Sec.*, 444 F.3d 837, 840 (6th Cir. 2006).

The Second Circuit followed the *Anderson* rationale in holding that attorney fees incurred in pre-suit exhaustion proceedings before a plan administrator are not recoverable under section 1132(g)(1). *Peterson v. Continental Cas. Co.*, 282 F.3d 112, 121 (2d Cir. 2002).   However in that case, the court approved an award of attorney fees for work performed at the administrative level after the district court remanded the matter during litigation.   The court declared:

> In contrast to pre-litigation costs, we see no reason that a party may not recover costs incurred during an administrative remand ordered by a court.   As demonstrated above, the text and legislative history indicate that once a court of law has assumed jurisdiction over a suit, all costs incurred may be shifted by a court to one party.   The fact that a court orders additional fact finding or proceedings to occur at the administrative level does not alter the fact that those proceedings are part of the "action" as defined by ERISA.   Where the administrative proceedings are ordered by the district court and where that court retains jurisdiction over the action during the pendency of the administrative proceedings, we hold that ERISA authorizes the award of associated costs.

-15-

*Id.* at 122.

The Fourth Circuit, however, held in *Rego v. Westvaco Corp.*, 319 F.3d 140 (4th Cir. 2002), that an ERISA claimant was not entitled to attorney fees for post-suit remand proceedings where the claimant was neglectful in his initial exhaustion attempt. *See id.* at 150 (stating that "the only reason that the administrative proceedings were mandated after court proceedings had already begun was because Rego had failed to exhaust them in the first place"). The court did not hold that section 1132(g)(1) was inapplicable in such circumstances, but it did find that the district court did not abuse its discretion in declining to award attorney fees to Rego.

The defendant urges this Court to follow the reasoning in *Rego*, contending that the plaintiff failed to exhaust his remedies before the plan administrator. However, it is apparent from the history of this case that both the plaintiff and his employer repeatedly requested reinstatement of Mr. Seal's medical coverage, which requests were consistently rebuffed by the defendant. The employer sent a letter on August 8, 2002, explaining its mistake and requesting reinstatement of the coverage for its employee. When that request was denied, Mr. Seal's attorney submitted a request explaining the procedural irregularities of terminating an employee's medical coverage retroactively without ever contacting him and disavowing responsibility for medical expenses already incurred by him. That request likewise was rejected in a letter stating that *the employer* could appeal the decision. Then the employer sent another letter on October 29, 2002 protesting the defendant's refusal to reinstate medical coverage, which met similar results. The record plainly demonstrates that a lawsuit was necessary for the plaintiff to obtain relief.

The Court did not order a remand in this case to permit the plaintiff to do something he should have done before filing suit. Therefore, the reasoning of *Rego* does not apply. Rather, after

-16-

the parties used the discovery process during the litigation to obtain information that apparently they had difficulty obtaining informally, the Court sent the case back to the administrator (at the parties' request) so that the plan administrator would have the first opportunity to set things right. *See* Order of Remand (Mar. 2, 2005). The remand proceedings were "intimately connected" with the litigation; the Court believes, therefore, that the rationale of the *Peterson* court governs and section 1132(g)(1) applies to the post-litigation administrative proceedings. Once a lawsuit is commenced (other than for the sole purpose of recovering attorney fees), the court has discretion to make an award under section 1132(g)(1).

B.

Section 1132(g)(1) does not entitle the plaintiff to attorney fees automatically, however. In exercising discretion under that section, the Sixth Circuit has identified five non-exhaustive factors to be weighed in considering an attorney fee request:

> 1) the degree of the opposing party's culpability or bad faith; 2) the opposing party's ability to satisfy the an award of attorney's fees; 3) the deterrent effect of an award on other persons under similar circumstances; 4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or to resolve significant legal questions regarding ERISA; and 5) the relative merits of the parties' positions.

*Foltice v. Guardsman*, 98 F.3d 933, 936-37 (6th Cir. 1996). The defendant has not addressed these factors, choosing instead to rely on its argument that attorney fees are not available for the administrative portions of the case. The defendant appears to concede that fees are appropriate for the time spent in Court that do not relate to post-complaint administrative proceedings.

Turning to the first factor, as the facts have shown, the defendant has not been responsive to the plaintiff or his attorney. At times, it appears that the defendant has mistaken the plaintiff's rights for that of his employer. The defendant wrote that it would not change the termination date

-17-

because the refunds had been applied to premiums of the employer for other employees. It also appears that defendant never informed the plaintiff of its decision to backdate the termination of benefits. Further, it is clear that both the plaintiff and the employer attempted numerous times in writing to persuade the defendant to change its mind. The defendant has since insisted that the employer and the plaintiff never filed a second level grievance. That may be true with respect to the employer, but the plan language itself does not suggest that the plaintiff must file such a grievance, and the plaintiff never was informed of his obligation to do so if one existed. In all events, between the plaintiff and his employer, three detailed requests were made before suit was filed. The Court finds that the first factor favors an award of attorney fees.

There seems to be little question that the defendant could satisfy and award of fees, the second factor that the Court is to consider. The third factor, the deterrent effect, also favors an award of attorney fees. The defendant in this case precipitously terminated medical coverage for a plan beneficiary who obviously was entitled to it, not only for future medical expenses but also for substantial expenses already incurred and pre-approved. The termination was backdated so as to eliminate the defendant's liability for hospital, physician, and medical supply costs provided to the plaintiff. The defendant's actions were taken without consulting or even notifying the plaintiff, and when the plaintiff protested through his attorney after the fact, the defendant denied the plaintiff's claim without informing him of his own appeal rights. Plan administrators should be discouraged from behaving in such a manner.

The fourth factor does not weigh in favor of awarding fees. The issue here does not impact other plan participants; it is uniquely personal to the plaintiff. The legal issue is not novel. In fact, as noted below, the law with respect to notification of rights and procedures is well established.

The relative merits of the parties' positions, the fifth factor identified by the *Foltice* court, favors the plaintiff. The record shows that the defendant cancelled the plaintiff's medical coverage absent any documentation showing that substitute coverage was in effect, enforced the cancellation retroactively, and failed to notify the plaintiff of the action or his own right to challenge it. ERISA provisions require notice and an explanation to plan beneficiaries. *See* 29 U.S.C. § 1133 (stating that welfare plans must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," and "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary"). The implementing regulations require denial notices to include "[a] description of the plan's review procedures . . . including a statement of the claimant's right to bring a civil action." 29 C.F.R. § 2560.503-1(g)(1)(iv). The letter that the defendant sent to the plaintiff did not address the plaintiff's right to review. An insurance company that administers a welfare benefit plan, such as the defendant here, must comply with these regulations. *VanderKlok v. Provident Life and Acc. Ins. Co., Inc.*, 956 F.2d 610, 615-16 (6th Cir. 1992). Although the plaintiff's attorney bears some responsibility for not reading the plan language and following the exact procedure, and the employer actually initiated the request to terminate coverage before it reversed its position, it was the defendant that proceeded with its actions precipitously without verifying critical information or consulting with the beneficiary. The entire matter could have been resolved at the administrative level had the defendant kept distinct the request of the employer and the interest of the beneficiary, for whom it acted as a fiduciary.

-19-

The Court concludes that balancing the factors results in an award of attorney fees to the plaintiff.

<div align="center">C.</div>

Section 1132(g)(1) contains no formula for calculating attorney fees, nor does it provide guidance as to the amount of a fee other than that the fee must be "reasonable." The plaintiff has argued that counsel is entitled to a percentage of the recovery, which amounts to a fee of over $67,000. However, the Supreme Court has endorsed the lodestar approach for determining reasonable attorney fees. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424 (1983); *see also Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (holding that "there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages. However, the award of attorneys' fees must be reasonable as determined under the 'lodestar' approach"). The Court finds that the lodestar method is a superior one for determining a reasonable fee because attorney fees under ERISA are not intended to punish the losing party or provide a windfall to the beneficiary. *See Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 697 (7th Cir. 1991) (observing that "the provision for attorneys' fees under ERISA is not in the nature of a punitive damage award, but rather is analogous to an assessment of costs").

The plaintiff's attorney has submitted a statement that he has expended 85.10 hours on the matter and contends that he is entitled to an hourly rate of $225. The Court has reviewed the statement and concludes that a portion of the time claimed was expended on pre-suit services, which are not eligible for reimbursement under section 1132(g)(1). The Court concludes that 60.6 hours were reasonably devoted to the representation of the plaintiff starting with the commencement of

<div align="center">-20-</div>

the litigation.   Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community.  *See Blum v. Stenson*, 465 U.S. 886, 895 (1984).  This determination is made, in turn, by assessing the experience and skill of the prevailing party's attorneys and comparing their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  *Id.* at 895 n. 11.  The Court finds that an hourly rate of $225 is reasonable.

The fee yielded by the lodestar method amounts to $13,635.00.  The Court does not find that any multiplier is appropriate in this case.

<div align="center">III.</div>

The Court finds that it has discretion to award attorney fees under 29 U.S.C. § 1132(g)(1) in this case for work performed with the commencement of the lawsuit in this case, including services performed at the administrative review level during a court-ordered remand.  The Court also finds that the appropriate factors weigh in favor of awarding an attorney fee, and the unenhanced lodestar method is the appropriate manner of calculating a reasonable fee.

Accordingly, it is **ORDERED** that the plaintiff's motion for attorney fees [dkt # 18] is **GRANTED**.

It is further **ORDERED** that the plaintiff is awarded attorney fees in the amount of $13,635.00.

<div style="margin-left: 40%;">
s/David M. Lawson                  <br>
DAVID M. LAWSON<br>
United States District Judge
</div>

Dated: July 13, 2006

<div align="center">-21-</div>

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 13, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS